

**U.S. BANKRUPTCY COURT**
**NORTHERN DISTRICT OF TEXAS**

# ENTERED

**TAWANA C. MARSHALL, CLERK**
**THE DATE OF ENTRY IS**
**ON THE COURT'S DOCKET**

**The following constitutes the ruling of the court and has the force and effect therein described.**

**Signed March 13, 2015**

**United States Bankruptcy Judge**

_____

IN THE UNITED STATES BANKRUPTCY COURT
FOR THE NORTHERN DISTRICT OF TEXAS
LUBBOCK DIVISION

| | | |
|---|---|---|
| In re:<br><br>RODNEY WAYNE WILSON and<br>DONNA LYNN WILSON,<br><br>Debtors. | §§§§§§§§ | Case No. 11-50396-RLJ-7 |
| CUSTOM FOOD GROUP, LP,<br><br>Plaintiff,<br><br>v.<br><br>JONELL MCCULLOCH,<br><br>Defendant. | §§§§§§§§§§§§§§§ | Adversary No. 14-05018 |

**MEMORANDUM OPINION**

Page 1

Sections 548 and 544 (with § 544 incorporating state law) of the Bankruptcy Code provide that a *trustee* may avoid a debtor's fraudulent transfer. Such provisions are raised in this action brought by Custom Food Group, LP (CFG) against Jonell McCulloch; CFG is a *creditor* of the debtors in the underlying bankruptcy case, Rodney and Donna Wilson. McCulloch moves to dismiss CFG's complaint, contending that CFG, as a creditor, does not have standing to bring this action.

I.

This suit stems from the alleged sale of a house the Wilsons owned in Ruidoso, New Mexico to McCulloch for $130,000; the sale took place less than a month prior to their chapter 11 bankruptcy filing. McCulloch is Donna Wilson's mother. The Wilsons filed their bankruptcy case on October 4, 2011.

The Wilsons' bankruptcy case was subsequently converted to chapter 7; a trustee, Myrtle McDonald, was appointed on September 27, 2013. CFG has contended throughout the bankruptcy proceedings that the transfer of the house to McCulloch, as well as the Wilsons' payments for the upkeep of that property, was a fraudulent transfer. With a deadline looming for filing a potential avoidance action to set aside the transfer,[1] CFG, on September 25, 2014, filed its *Complaint to Avoid Fraudulent Prepetition Transfers by Debtor* [Docket No. 1, Adv. No. 14-05018]. CFG states that the property was sold below market value. *Id.* at 3–4. It estimates the value of the real property at the time of the transfer was $250,000, thus significantly more than the $130,000 that McCulloch paid. *Id.* at 4. The Wilsons, CFG contends, continued to make payments for the maintenance and upkeep of the property. *Id.* CFG seeks recovery under §§ 544, 548, and 550 of the Code. *Id.* at 5–8.

---

[1] The order converting the case to chapter 7 was signed on September 26, 2013, and was entered on September 27, 2013. The trustee was appointed the day the case was converted to chapter 7. Given the circumstances of this case, the trustee could file an avoidance action no later than one year after being appointed. 11 U.S.C. § 546(a).

Fifty minutes after CFG filed its complaint, the chapter 7 trustee filed her own complaint against McCulloch seeking avoidance of the house-sale under §§ 544(b) and 548. *See* Trustee's Complaint at 2–3 [Docket No. 1, Adv. No. 14-05019]. McCulloch therefore has two pending lawsuits against her seeking avoidance of the same allegedly fraudulent transfer.

As stated, McCulloch seeks dismissal of CFG's action.

## II.

McCulloch argues that CFG does not have standing to bring this action because the trustee alone has such power and any notion of CFG having derivative standing fails because the trustee has in fact filed her complaint addressing the same event. There is simply no authority under the Code for CFG's action, McCulloch submits.

## A.

Though McCulloch does not specify a rule or statute upon which her motion is based, a motion to dismiss that attacks a party's standing "is a jurisdictional matter." *Broadhollow Funding LLC v. Bank of America, N.A. (In re Am. Home Mortg. Holdings, Inc.)*, 390 B.R. 120, 128 (Bankr. D. Del. 2008); s*ee Hunt v. Hunt (In re Hunt)*, 149 B.R. 96, 99 (Bankr. N.D. Tex. 1992); Michael Smith, *O'Connor's Federal Rules \* Civil Trials* 73 (2012). Rule 12(b)(1) of the Federal Rules of Civil Procedure (made applicable by Federal Rule of Bankruptcy Procedure 7012) addresses dismissal for lack of subject matter jurisdiction.

The party asserting jurisdiction bears the burden of proof on a Rule 12(b)(1) motion to dismiss. *Ramming v. U.S.*, 281 F.3d 158, 161 (5th Cir. 2001). CFG therefore bears the burden of proof. At the December 17, 2014 hearing, CFG's counsel said that CFG filed its complaint to ensure that the estate's fraudulent transfer claims were filed before the limitation period ran;[2] CFG was not confident that the trustee would bring the avoidance action against McCulloch. CFG

---

[2] *See supra* note 1.

concedes that though it is unfair to have two lawsuits pending against McCulloch, it submits that the causes raised by its complaint are significantly different from the causes raised by the trustee's. First, CFG makes a claim for fraudulent transfer under § 548(a)(1)(A),[3] which is premised on the debtors' actual fraud, as opposed to constructive fraud. The trustee does not make such a claim. Second, CFG argues that it alleges the fraud claim with particularity while the trustee does not. Finally, CFG contends that the trustee's complaint fails to adequately plead the Texas fraudulent transfer statute—by merely referring to § 544(b) of the Code—and that she may now be prevented by the time limitation of § 546(a) from curing this deficiency by amending her complaint.

CFG requests other relief as a way to address its standing problem. CFG asks that the Court grant it derivative standing so that it can pursue its pleaded causes, or, alternatively, that the Court substitute the trustee as the plaintiff in CFG's action against McCulloch. CFG believes it has filed the better pleaded complaint and wants its complaint pursued.

B.

1.

Avoidance actions belong to the estate. *In re Educators Grp. Health Trust*, 25 F.3d 1281, 1284–86 (5th Cir. 1994); *Am. Nat'l Bank of Austin v. MortgageAmerica Corp. (In re MortgageAmerica Corp.)*, 714 F.2d 1266, 1275–76 (5th Cir. 1983). "If a cause of action belongs to the estate, then the trustee has exclusive standing to assert the claim." *Educators Grp.*, 25 F.3d at 1284 (citations omitted); *see also Hartford Underwriters Ins. Co. v. Union Planters Bank, N.A.*, 530 U.S. 1, 7 (2000) (holding that an administrative claimant does not have standing to seek payment of its claim under § 506(c) because the language of the statute reserves standing on that provision to the trustee); *Reed v. Cooper (In re Cooper)*, 405 B.R. 801, 807 (Bankr. N.D. Tex. 2009) (only the

---

[3] Section 548(a)(1)(A) provides for the avoidance of a transfer made within 2 years before the date of filing of the petition if the debtor "made such a transfer or incurred such obligation with actual intent to hinder, delay, or defraud any entity to which the debtor was or became … indebted[.]"

Page 4

trustee has independent standing to pursue chapter 5 avoidance actions); *Klingman v. Levinson*, 158 B.R. 109, 113 (N.D. Ill. 1993) (once bankruptcy case commences, trustee has right to pursue fraudulently conveyed assets to exclusion of creditors).

In *Hartford Underwriters*, the Supreme Court held that an administrative claimant does not have standing to seek payment of its claim under § 506(c). 530 U.S. at 14. In doing so, the Supreme Court inquired if the text of § 506(c) stating that "[t]he trustee may recover . . ." means that the trustee is the only party empowered to invoke its provisions. *Id.* at 5–6. The Court examined the language and held that "exclusivity is intended." *Id.* at 6. In doing so, the Court said that "a situation in which a statute authorizes specific action and designates a particular party empowered to take it is surely among the least appropriate in which to presume nonexclusivity." *Id.* The Court also stated that "had Congress intended the provision to be broadly available, it could simply have said so, as it did in describing the parties who could act under other sections of the Code." *Id.* at 7.

Here, as in *Hartford Underwriters*, the sections of the Code under which CFG brings its causes of action, §§ 544 and 548, begin with "[t]he trustee *shall* . . ." and "[t]he trustee *may* . . . ," respectively. 11 U.S.C. §§ 544(a); 548(a)(1) (emphasis added). The Code assigns standing to the trustee to pursue these avoidance actions.

2.

The next question is whether CFG can be granted derivative standing. With derivative standing, a creditor can pursue an action that belongs to the trustee by, in effect, standing in the trustee's shoes. *See Larson v. Foster (In re Foster)*, 516 B.R. 537, 541–42 (B.A.P. 8th Cir. 2014); *Cataldi v. Olo Corp. of N.J. (In re County Seat Stores, Inc.)*, No. 99-10010, 2007 WL 4191946, *8 (Bankr. N.D. Tex. June 21, 2007) (citing *Hartford Underwriters*, 530 U.S. at 13 n.5).

McCulloch argues that the Court does not have the power to grant CFG derivative standing because CFG has neither timely petitioned the Court for derivative standing nor obtained an assignment of the avoidance causes from the trustee.

In chapter 11 cases, courts have granted derivative standing to a non-trustee party to pursue a claim that belongs to the trustee. *See, e.g.*, *Smart World Techs., LLC v. Juno Online Servs., Inc. (In re Smart World Techs., LLC)*, 423 F.3d 166, 176–78 (2d Cir. 2005) (stating that although creditors have an "implied, qualified right to bring suit on behalf of the estate" when the debtor-in-possession refuses to pursue a claim, creditors have a high burden of proof when the debtor-in-possession decides to pursue the claim); *Official Comm. of Unsecured Creditors of Cybergenics Corp. v. Chinery*, 330 F.3d 548, 566 (3d Cir. 2003) (recognizing that creditors committee had derivative standing); *La. World Exposition v. Fed. Ins. Co.*, 858 F.2d 233, 247 (5th Cir. 1988) (noting that creditors committee can pursue a claim that the debtor-in-possession refuses to pursue).[4]

On the other hand, in chapter 7 cases, courts typically deny a request for derivative standing from a creditor who has independently pursued an avoidance action. *See Cooper*, 405 B.R. at 812–16; *In re Chapman Lumber Co., Inc.*, 343 B.R. 217, 221 (Bankr. N.D. Iowa 2006). There is no explicit statutory authority granting a non-trustee party the power to sue on behalf of the trustee; the derivative powers recognized by the courts in chapter 11 do not apply in a chapter 7 case. *Hartford Underwriters*, 530 U.S. at 8 (refusing to extend the right-to-be-heard right of § 1109(b) for a "party in interest" to other Code provisions that afford specific substantive remedies to specific parties).[5]

---

[4] The Third Circuit in *Cybergenics* held that the Supreme Court's decision in *Hartford Underwriters* did not prevent the bankruptcy court from authorizing the filing of a fraudulent transfer action by a creditors' committee in a chapter 11 case. In doing so, the court looked to the "framework" of chapter 11—specifically §§ 1109(b), 1103(c)(5), and 503(b)(3)(B) (the Court notes that § 503(b)(3)(B) does not apply to just chapter 11 cases)—in reaching its conclusion that the committee did have standing to sue. *Cybergenics*, 330 F.3d at 566.

[5] *See supra* note 4.

As one court bluntly stated, "[t]he case dynamics are simply very different in Chapter 7." *Cooper*, 405 B.R. at 812.

There are limited circumstances in which a creditor in a chapter 7 case can obtain derivative standing. Courts have granted standing to a creditor in a chapter 7 case when the trustee expressly transferred that power to the creditor with the bankruptcy court's approval. *Avalanche Mar., Ltd. v. Parekh (In re Parmetex, Inc.)*, 199 F.3d 1029, 1031 (9th Cir. 1999). Courts have also granted derivative standing to a creditor in a chapter 7 case when the creditor made a demand on the trustee to pursue a certain claim and the trustee unjustifiably *refused* the demand. *See PW Enters., Inc. v. N.D. Racing Comm'n (In re Racing Servs., Inc.)*, 540 F.3d 892, 898–900 (8th Cir. 2008); *In re Dzierzawski*, 518 B.R. 415, 424 (Bankr. E.D. Mich. 2014) (citing *Canadian Pac. Forest Prods. Ltd. v. J.D. Irving, Ltd. (In re The Gibson Grp., Inc.)*, 66 F.3d 1436 (6th Cir. 1995)). The court in *Foster* summarized the policy behind restricting derivative standing in chapter 7 cases as follows:

> The power to grant derivative standing to a creditor to pursue estate causes of action … should not be exercised in a relaxed manner by bankruptcy courts. Otherwise, a creditor could "hijack" a Chapter 7 bankruptcy case in a manner Congress did not envision. If a creditor does not agree with a Chapter 7 trustee's exercise of its fiduciary duties, it can file a motion to compel the trustee to act or file a motion to have the trustee removed. But, it would seem to be, generally, an unwise idea to allow a creditor to usurp the trustee's role as a representative of the estate—including being a gatekeeper for what actions make sense and the evaluator of the potential benefits of litigation.

*Larson v. Foster (In re Foster)*, 516 B.R. 537, 541–42 (B.A.P. 8th Cir. 2014) (quoting *Cooper*, 405 B.R. at 807).

3.

CFG also raised in oral argument the concept of "prudential standing" as a possible basis for its standing to bring the action against McCulloch. Its response to McCulloch's motion also refers to prudential standing. The reference comes from *In re Godon, Inc.*, a bankruptcy court opinion from the Eastern District of California. 275 B.R. 555 (Bankr. E.D. Cal. 2002). The *Godon* court

referred to "some form of 'prudential standing'" that in turn gives derivative standing to a creditor to "exercise powers that are otherwise reserved to the trustee." *Id*. at 565.

As the court ably explained in *Godon*, prudential standing is a concept from the courts or Congress that imposes a "higher degree of relation to a matter in litigation" than does the constitutional minimum for standing. *Id*. at 563. It is a bit tricky as applied here, however. The statute, by stating that the trustee alone can bring the avoidance action, invokes this concept of prudential standing. But as *Godon* says, the courts have likewise raised the concept, though perhaps not always explicitly, by allowing creditors under certain circumstances to bring avoidance actions. *Id*. at 565–66. The "certain circumstances" are thus limiting factors as compared with the minimum constitutional standard for standing. It can be argued that Congress has already provided further limitation by allowing trustees to bring such actions. Regardless, CFG has not satisfied any of the other circumstances that might justify prudential standing. There is no evidence that it demanded that the trustee bring suit and that she unjustifiably refused to do so. It did not ask the Court for permission to file suit before it actually filed the complaint here. And there is no evidence that the trustee consented to CFG filing the action; by filing her own complaint, she clearly did not consent. Raising prudential standing here is of no avail.

### III.

Sections 548 and 544 of the Bankruptcy Code allow *trustees* to bring fraudulent transfer actions. The trustee has done so here. CFG does not have an independent right to bring such actions, and the trustee's causes have not been assigned to CFG upon the Court's approval. The Court cannot ignore McCulloch's rights and fix by fiat CFG's standing problem. McCulloch's motion will be granted.

### End of Memorandum Opinion ###